UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAVID B.,

Plaintiff,

                                         Case No. 1:20-cv-01248-TPK

      v.

COMMISSIONER OF SOCIAL              OPINION AND ORDER
SECURITY,

Defendant.

## OPINION AND ORDER

Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on July 24, 2020, denied Plaintiff's application for supplemental security income. Plaintiff has now moved for judgment on the pleadings (Doc. 12), and the Commissioner has filed a similar motion (Doc. 13).  For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant.

## I.  BACKGROUND

On August 22, 2017, Plaintiff protectively filed his application for benefits, alleging that he became disabled on March 15, 2007, which date was later amended to his application date. After initial administrative denials of his claim, Plaintiff appeared at an administrative hearing held on September 25, 2019.  Both Plaintiff and a vocational expert, Dale Pasculli, testified at that hearing.

The Administrative Law Judge issued an unfavorable decision on December 3, 2019.  In that decision, the ALJ first concluded that Plaintiff had not engaged in substantial gainful activity since his amended onset date.  He then found that Plaintiff suffered from severe impairments including major depressive disorder, generalized anxiety disorder, agoraphobia, and social anxiety.  He further determined that these impairments, viewed singly or in combination, were not of the severity necessary to qualify for disability under the Listing of Impairments.

Moving on to the next step of the inquiry, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels.  However, he had nonexertional limitations, being able to perform only simple, routine and repetitive tasks and able to perform simple work-related decisions.  Additionally, he could interact occasionally with

supervisors, coworkers, and the general public.

The ALJ next determined that Plaintiff had no past relevant work. He found, however, that even with his limitations, Plaintiff could perform jobs like addresser, packing line worker, and kitchen helper. The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in his motion for judgment, raises two issues. He contends (1) that the ALJ erred in evaluating Plaintiff's subjective complaints; and (2) that the ALJ did not give appropriate weight to the opinion of Plaintiff's counselor.

## II. THE KEY EVIDENCE

The Court will begin its review of the evidence by summarizing the testimony from the administrative hearing. It will then provide a summary of the most important medical records.

Plaintiff, who was 28 years old when he filed his applications, first testified that he left high school in the tenth grade and had not earned a GED. He could, however, read, write, and do basic math. His only job had been working as a janitor at a school over the summer break.

When asked why he could not work, Plaintiff said that he was generally unable to leave his house or to interact with people. He also said that he had back and leg pain and at times was not able to walk. He took only over-the-counter medication for his pain, however. Plaintiff also took Ambien to help him sleep and had been prescribed various medications to treat his psychological conditions. He was seeing a counselor every three weeks and a psychiatrist every other month for medication management.

Plaintiff said that he had no problem with understanding directions or making decisions. He did have problems getting along with others, however, and said he had no friends and did not get along with his family. He also suffered from panic attacks which could last for an hour at a time. Plaintiff spent his days doing household chores and taking care of his personal needs. His father shopped for his groceries, and Plaintiff left the house only to go to medical appointments.

The vocational expert, Mr. Pasculli, was advised that Plaintiff did not have any past relevant work, and he was then asked questions about a hypothetical person of Plaintiff's age and educational background who was limited to simple, routine, repetitive work which did not require more than occasional contact with others. In response, the expert identified jobs at the sedentary, light, and medium levels which such a person could perform, including addresser, packing line worker, and kitchen helper. In response to additional questions which added work-related limitations, the expert identified other jobs which could be performed, but said that if the person could not make any work-related decisions or have any contact with coworkers, there would be no jobs which he or she could do. The same would be true for someone missing more than one day of work per month or being off task more than 10% of the time.

There are an extensive number of medical records, but the Court's summary of them will be limited to those which counsel have highlighted in their memoranda.  The records show that Plaintiff underwent a mental health intake assessment in October, 2016, at which time he began a treatment program with Spectrum Human Services.  Notes show that he was reluctant to begin treatment because he preferred to isolate himself and was anxious around others. His mood at that time was described as anxious and depressed.  He was started on medication and diagnosed with major depressive disorder, recurrent, and generalized anxiety disorder.  His medication was increased over time but as of June, 2017, he had not experienced any improvement in his symptoms.  By September, he was reporting increased symptoms of depression, but later in the year he reported making more an effort to connect with friends and family members.  That activity continued into 2018 as well and by April he was showing improvement in this area.  By March of the following year, his socialization problems were described as having been resolved, but in August of that year he was still reporting anxiety with leaving his house or going to appointments and he was worrying constantly and having occasional panic attacks.  .

Dr. Santarpia performed a psychiatric evaluation, on a consultative basis, on October 11, 2017.  At that time, Plaintiff was still experiencing anxiety which led to social withdrawal.  At the examination, he did not make eye contact and he was very nervous as well as agitated.  However, his attention and concentration were intact as was his memory.  Dr. Santarpia thought that Plaintiff could remember and apply both simple and complex instructions, make work-related decisions, sustain concentration and attention, perform tasks at a consistent pace, and maintain regular attendance at work.  However, he had a mild to moderate impairment in the areas of interacting with others, regulating his emotions, controlling his behavior, and maintaining his well-being, including being aware of work hazards and taking appropriate precautions.  (Tr. 395-98).

Shannon Dunn, who had been Plaintiff's counselor since 2016, completed a mental residual functional capacity questionnaire on August 27, 2019.   She reported that Plaintiff was having difficulty with social interactions and was depressed and anxious.  She saw only a small likelihood that he would improve enough to be able to work, and described his symptoms as including paranoid thinking, emotional withdrawal or isolation, persistent disturbances of mood or affect, and recurrent severe panic attacks.  Ms. Dunn concluded that Plaintiff was seriously limited in multiple work-related areas including getting along with others and dealing with normal work stress.  She also said that he would miss four or more days per month and could not engage in full-time competitive employment on a sustained basis.  (Tr. 1137-41).

There is also an opinion in the record from a state agency medical reviewer, Dr. Inman-Dundon.  That opinion confirmed that Plaintiff had severe mental disorders including depressive, anxiety, and obsessive-compulsive related disorders, but concluded that those disorders caused only mild to moderate symptoms, primarily in the areas of interacting with others, regulating emotions, controlling behavior, and taking precautions around work hazards.  (Tr. 72-73).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

### IV.  DISCUSSION

#### A.  Evaluation of Subjective Complaints

Plaintiff's first claim of error is that the ALJ did not properly evaluate his subjective complaints - in particular, his assertion that his agoraphobia was so severe that he found it difficult even to leave his house and that he was extremely anxious around others.  While acknowledging that the ALJ has a considerable amount of discretion in deciding how much weight to give to such statements made by a claimant, Plaintiff argues that the ALJ placed too much emphasis on the fact that Plaintiff's symptoms had improved over time - noting that improvement is not always the equivalent of recovering the ability to do work-related activities - and on Plaintiff's willingness and ability to engage in therapy to treat his disorders.  The Commissioner argues that the ALJ made a reasonable decision here because "the totality of the

evidence of record failed to support Plaintiff's subjective allegations," Commissioner's Memorandum, Doc. 13-1, at 6, and because the ALJ was entitled to find Dr. Santarpia's and Dr. Inman-Dundon's opinions - which found only mild to moderate restrictions in the ability to relate to others - persuasive.

The applicable Social Security Ruling (SSR) here is SSR 16-3p. Under SSR 16-3p, there are seven relevant factors which may bear on the issue of a claimant's credibility. They are (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. As this Court stated in *Wynn v. Comm'r of Social Security*, 342 F. Supp. 3d 340, 350 (W.D.N.Y. 2018):

> The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." *Whiting v. Astrue*, No. CIV.A. 1:12-274, 2013 WL 427171, at *6, 2013 U.S. Dist. LEXIS 15109, at *22 (N.D.N.Y. Jan. 15, 2013), *adopted*, 2013 WL 427166, 2013 U.S. Dist. LEXIS 14944 (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart*, 440 F.Supp.2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).

In his decision, the ALJ first recited the correct legal standard, noting that his evaluation must follow a two-step process, first determining if there is an underlying medical condition which could reasonably be expected to cause the claimant's symptoms, and then evaluating the extent to which "the intensity, persistence, and limiting effects of the claimant's symptoms ... limit the claimant's work-related activities." (Tr. 20). The ALJ then summarized Plaintiff's testimony at the hearing but found that to the extent Plaintiff described symptoms which would prevent him from working, his testimony was "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 21). In explaining that conclusion, the ALJ cited to records from 2017 showing improvement in Plaintiff's condition, the absence of any hospitalizations or emergency room visits to treat his symptoms, the fact that he showed intact attention, concentration, and memory skills, and additional treatment notes from 2018 indicating that there was definite improvement in Plaintiff's depression and social anxiety, along with statements from Plaintiff showing that his medications were working. The ALJ also pointed out that both Drs. Santarpia and Inman-Dundon had found a lesser degree of impairment, and he considered their opinions persuasive because they were knowledgeable about the Social Security program and because their findings were consistent with the evidence. (Tr. 22-24).

-5-

Despite Plaintiff's argument to the contrary, the Court finds no error in the way in which the ALJ evaluated the evidence concerning its consistency with Plaintiff's testimony and other statements about his symptoms. The ALJ accurately described the record evidence, and Plaintiff does not argue otherwise. The difference between Plaintiff's view of that evidence and the ALJ's decision on this issue is one of interpretation. It might be reasonable to view the evidence as confirming, to some extent, that Plaintiff had real difficulty dealing with others and being out in public. It is also reasonable, however, to interpret the evidence as showing that Plaintiff had made sufficient progress to allow him to function in a work setting where he was limited to simple, routine, repetitive tasks and where he would have to interact with others on only an occasional basis. Both of the expert opinions on which the ALJ relied construed the evidence in this fashion, and nothing in the notes which post-date their opinions revealed any significant worsening in Plaintiff's condition; in fact, they largely show just the opposite. For all of these reasons, the Court concludes that Plaintiff's first claim of error does not support remanding the case to the Commissioner for further consideration of this issue

### B.  The Counselor's Opinion

As noted in the Court's review of the evidence, it was the opinion of Plaintiff's counselor, Ms. Dunn, that Plaintiff was affected by his psychological impairments to the point where he was not employable. Plaintiff notes that by the time this opinion was rendered, he had been seeing Ms. Dunn for counseling every three weeks for a lengthy period of time, making her opinion well-founded, and that the ALJ erred by concluding that the improvement described in the treatment notes provided a reasonable basis for giving Ms. Dunn's opinion only partial weight. The Commissioner responds that Plaintiff is simply asking this Court to do its own weighing of the competing opinions, something that is beyond the proper scope of its review.

The ALJ provided the following rationale for giving only partial weight to Ms. Dunn's opinion. He acknowledged that her opinion was based on her personal knowledge of Plaintiff's condition, acquired through a lengthy history of counseling, but he concluded that, unlike the other opinions in the record, hers was not consistent with the mental status findings contained in the treatment record, nor did it account for the fact that Plaintiff's condition had improved through conservative treatment. (Tr. 23).

Both parties agree that an ALJ has considerable discretion in determining which medical or other opinions to credit and to determine how much weight each opinion should be given. As this Court said in *Slattery v. Colvin*, 111 F. Supp. 3d 360, 372 (W.D.N.Y. 2015), an ALJ must consider various factors in making that decision, including

> the frequency of treatment, consistency with other evidence, degree of supporting evidence, thoroughness of explanation, and whether the source has an area of expertise [citation omitted]. Where two or more submitted medical opinions conflict, it is within the ALJ's discretion to determine which opinion will receive controlling weight. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998)."

That is precisely what the ALJ did here, and, beyond arguing that the evidence showing improvement in Plaintiff's condition is not completely determinative of whether Plaintiff can work, Plaintiff offers little in the way of support for his argument that the ALJ erred in his choices.  Certainly, the ALJ was entitled to consider the extent to which Plaintiff's symptoms improved with treatment as relevant to the question of which experts were most persuasive, and there is nothing in the record indicating that he gave this factor undue weight to the exclusion of other pertinent evidence.  Again, taking the evidence of record as a whole, a reasonable person could have concluded, as the ALJ did, that Dr. Santarpia and Dr. Inman-Dundon expressed opinions that were better supported by the treatment record than did Ms. Dunn.  Since that places the ultimate decision on this issue squarely within the zone of decision-making which is committed to the ALJ, this Court is obliged to affirm that decision.  Thus, the second claim of error also provides no basis for directing a remand.

## V.  CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 12), **GRANTS** the Commissioner's motion (Doc. 13), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**